IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00759-KLM

MARSHALL L. DUNN, SR.,

   Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

   Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#9],[2] filed on July 2, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act"). *See Compl.* [#1]. On July 30, 2014, Plaintiff filed an Opening Brief [#12] (the "Brief"). Defendant filed a Response [#13] in opposition, and Plaintiff filed a Reply [#14]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, this case is

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Consent Form* [#17]; *Order of Reference* [#18].

[2] "[#9]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

**REVERSED** and **REMANDED** to the Commissioner for further fact finding.

## I. Factual and Procedural Background

Plaintiff alleges that he became disabled on March 6, 2008, at the age of fifty-three. Tr. 166.[3] On December 8, 2010, he filed for Title II disability insurance benefits. Tr. 166. On November 7, 2012, a hearing was held before an Administrative Law Judge (the "ALJ"). Tr. 24. On November 27, 2012, the ALJ issued a decision in which she determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. Tr. 12. She further determined that he engaged in substantial gainful activity ("SGA") subsequent to his alleged onset date. Tr. 12. She noted that "claimant is not considered to be disabled for many of the quarters during which he alleges disability on the basis of earnings alone. However, giving the claimant the benefit of all doubt, the undersigned has elected to proceed with the sequential disability analysis to at least consider isolated quarters when claimant's earnings did not meet SGA level." Tr. 12.

The ALJ found that Plaintiff had five severe impairments during the relevant period: (1) degenerative disc and joint disease, (2) osteopenia of the hips, (3) chronic headaches, (4) chronic pulmonary insufficiency, and (5) vertigo. Tr. 13. However, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 13. After reviewing the evidence of record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC"):

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, 9-7, 9-8, and 9-9 by the sequential transcript numbers instead of the separate docket numbers.

>to perform light work as defined in 20 CFR 404.1567(b) except the claimant: can stand and/or walk for a total of six hours in an eight hour workday; can sit for a total of six hours; can occasionally climb ramps/stairs, stoop, crouch, kneel and crawl; cannot climb ladders, ropes or scaffolds, and requires no exposure to unprotected heights or confined spaces with heavy smoke or dust conditions.

Tr. 13. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff "was capable of performing past relevant work as a medical assistant, pharmacy technician and a convenience store assistant manager/cashier" and that these jobs did "not require the performance of work-related activities precluded" by Plaintiff's RFC. Tr. 16. She therefore found Plaintiff "not disabled" at step four of the sequential evaluation. Tr. 17.

Plaintiff appealed to the Appeals Council, which denied his request for review of the ALJ's decision. Tr. 2. Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

>[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall*

*v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision of the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues *de novo. Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," regardless of whether the Court may have "made a different choice had the matter been before it *de novo.*"

*Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.      Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient [RFC] to perform

other work in the national economy." *Id.*

## B.     Substantial Evidence

An ALJ must consider all evidence and explain why she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported [her] ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying him disability insurance benefits. *Brief* [#12] at 2. Plaintiff brings two main challenges to the ALJ's findings. The Court addresses each argument in turn.[4]

---

[4] To the extent Defendant argues that the ALJ found that Plaintiff engaged in SGA at step two of the analysis and that the Court should affirm the decision on that basis alone, the Court declines to do so. *Response* [#13] at 7-9. The ALJ proceeded past step two of the analysis in

-7-

**A.      Whether the ALJ Failed to Properly Weigh the Treating Physician's Opinion**

Plaintiff argues that the ALJ failed to adequately weigh the opinion of Plaintiff's treating physician, Elaine Quintana, M.D. ("Quintana"). *Brief* [#12] at 18. Plaintiff argues that the ALJ erred by failing to "follow the two-step process for assessing the treating physician's opinion . . . ." *Id.* On June 3, 2012, Dr. Quintana provided a physical residual functional capacity assessment of Plaintiff for the purpose of informing the ALJ of her opinions regarding Plaintiff's conditions. Tr. 681-87. Dr. Quintana had treated Plaintiff approximately every 3-6 months since December 5, 2007. Tr. 684. She opined that Plaintiff would miss approximately four or more days of work per month due to his impairments. Tr. 687. She stated that Plaintiff's impairments were severe enough to interfere daily with the attention and concentration needed to perform even simple work tasks. Tr. 685. She asserted that Plaintiff could not sit for more than four hours total (or thirty minutes at a time) or stand/walk for more than two hours in an eight-hour period. Tr. 685-86.

"Our case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded controlling weight, on the matter to which it relates." *Id.* (internal quotation marks omitted). "Such an opinion must be given

---

order to "at least consider isolated quarters when claimant's earnings did not meet SGA level." Tr. 13. The Court therefore does the same here when considering Plaintiff's two arguments with respect to step four of the analysis.

controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*  But "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference." *Id.*  Thus, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the [applicable] regulations for this particular purpose, for the weight assigned." *Id.*

Here the ALJ collapsed the two-step inquiry into a single point, stating only that she "gives this opinion little weight" because "[t]he opinion is not supported by the objective findings" and "is inconsistent with the claimant's own testimony . . . ." Tr. 15.  The ALJ's decision does not explicitly mention the issue of controlling weight at all.  However, the ALJ is not required to expressly state that she denied controlling weight to a treating physician's opinion when it is implicitly clear from the ALJ's analysis that she declined to give the opinion controlling weight. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).  An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Here, the ALJ cited to both the medical record and to Plaintiff's testimony and self-reports to physicians regarding his abilities to demonstrate that Dr. Quintana's opinion was not consistent with other substantial evidence in the record. Tr. 15. Plaintiff flatly misstates the law when he argues that "the ALJ **cannot** reject an opinion [at step two of the treating

physician analysis] for the same reason that denied the opinion controlling weight." *Brief* [#14] at 9 (emphasis in original) (citing S.S.R. 96-2p, 1996 WL 374188, at *4 ("[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record **means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected**.") (emphasis added by Plaintiff)). Neither Plaintiff's citation nor any other law presented to the Court states that the same evidence may not be used to determine first whether an opinion is entitled to controlling weight and, if not, then what weight that opinion should be given, if any. Although the legal analysis at each step is not identical, *see Krauser*, 638 F.3d at 1330-31, Plaintiff's assertion that the same evidence may not be utilized at each step is without merit. Because the ALJ demonstrated that Dr. Quintana's opinion was not consistent with other substantial evidence, she implicitly found that the opinion was not entitled to controlling weight. "Because we can tell from the decision that the ALJ declined to give controlling weight to [Dr. Quintana's] opinion, we will not [remand] on this ground." *Mays*, 739 F.3d at 575.

Even if a treating physician's medical opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c).

Plaintiff argues that by assigning Dr. Quintana's opinion "little weight," the ALJ essentially rejected the opinion. *Reply* [#14] at 7 (citing to *Quintero v. Colvin*, 567 F. App'x 616, 620 n.6 (10th Cir. 2014) ("Although the ALJ actually stated she assigned the opinion 'little, if any weight' rather than outright rejecting it, we have recognized such statements operate as the equivalent of a rejection of the opinion." (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (construing the ALJ's decision to assign little weight to an opinion as an effective rejection of it)))). This may be true in some situations where the ALJ states that she is giving an opinion "little weight" but then fails to allot it any weight whatsoever in her analysis. *See Chapo*, 682 F.3d at 1291. Here, however, it is patently clear that the ALJ did *not* fully reject Dr. Quintana's opinion but, rather, merely gave it little weight. Based on Dr. Quintana's opinion, the ALJ, "to give the benefit of all possible doubt to the claimant, limited the claimant to the above-reduced light exertional level as the objective findings do indicate some mild to moderate degenerative disc and joint disease, as well as chronic pulmonary insufficiency." Tr. 15. Thus, the ALJ explicitly gave weight to some portions of Dr. Quintana's assessment and did not outright reject her entire opinion.

The ALJ discussed the opinion of Dr. Quintana at length to explain why she gave her opinions little weight. Tr. 14-16 (discussing the objective evidence and Plaintiff's testimony, which were deemed not fully consistent with Dr. Quintana's opinion). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300). Given these considerations and its review of Dr. Quintana's opinion, the Court finds that the ALJ's decision is sufficiently specific to make clear the weight she gave to Dr. Quintana's medical opinion and the reasons for that weight. *See Oldham*, 509 F.3d at 1258.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001). However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The ALJ has met these standards. Accordingly, the Court finds that, with respect to Plaintiff's first argument, the ALJ did not err.

## B.    Whether the ALJ Failed to Account for Plaintiff's Headaches[5]

Plaintiff argues that the ALJ erred by failing to consider Dr. Quintana's limitations regarding Plaintiff's headaches at step four of the analysis when she determined Plaintiff's RFC. *Brief* [#12] at 23. On June 1, 2012, Dr. Quintana assessed Plaintiff as suffering from a combination of migraine headaches, occurring at least twice a month and lasting 2-3 days

---

[5] The ALJ's discussion of Dr. Quintana's opinion evidence discussed above in Section III.A. concerned only Plaintiff's physical RFC assessment, which was an independent report from the one regarding Plaintiff's headaches. *Compare* Tr. 681-87 *with* Tr. 695-96. The ALJ did not refer to Plaintiff's headaches in her discussion of Dr. Quintana's reports. Tr. 15. Further, the ALJ's citation to Exhibit 5F, the physical RFC assessment, does not include Dr. Quintana's assessment with respect to Plaintiff's headaches, which is located at Exhibit 6F. *Compare* Tr. 681-87 *with* Tr. 695-96. The ALJ does not cite to Exhibit 6F in her analysis.

each, and cluster headaches, occurring about twice a year and lasting approximately one week each. Tr. 696. Dr. Quintana had prescribed Plaintiff oxygen for the cluster headaches and the medication Sumatriptan for the migraine headaches, but the headaches continued despite treatment. Tr. 696. Plaintiff's headaches were associated with nausea, photophobia, and extreme weakness, and Dr. Quintana opined that Plaintiff could not function on the job while the headaches occur because he could not leave home and was severely limited in his ability to function. Tr. 696.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. "Rather, in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010. Although the ALJ thoroughly discussed some of the evidence regarding Plaintiff's headaches (Plaintiff's testimony, medical history, treatment, and the diagnosis of a neurology specialist), she failed to reference Dr. Quintana's report regarding Plaintiff's headaches. Tr. 14-16, 696. The headache report is "significantly probative evidence" that contradicts the ALJ's ultimate determination. The report was apparently either rejected without comment or simply accidently overlooked. It would be an insupportable stretch for the Court to determine based on the ALJ's decision that Dr. Quintana's report was actually considered. *See* Tr. 14-16. Under *Clifton v. Chater*, 79 F.3d at 1009-10, the ALJ was required to discuss this evidence and its impact on her analysis. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)) (stating that "[a]n ALJ must evaluate every medical opinion in the record").

The Court cannot conclude that the ALJ's error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). While the ALJ provided a thorough summary of the other evidence regarding Plaintiff's headaches, she did not link any part of that summary to Dr. Quintana's medical opinion on the issue. Therefore, the Court cannot conclude that no reasonable factfinder would have reached a different conclusion.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated: April 15, 2015                             BY THE COURT:

Kristen L. Mix
United States Magistrate Judge